All right, we'll call the case of Reddy v. Buttar and we're going to hear this argument by remote. We'll hear Mr. Thomas and Mr. Bondurant. Can you both hear us? Yes, Judge. Okay, Mr. Bondurant, you're on mute, but I gather you can hear us. Okay. All right, we'll hear from Mr. Thomas first. Good morning. May it please the court. My name is George Thomas and I'm counsel for appellant Dr. Rashid Buttar. To give a brief background, in 2010, Dr. Buttar engaged in negotiations with Mr. Reddy, the appellee in this case, concerning some parcels of land in the Philippines. The two men sought to the underlying companies that owned the property. And it was at the time of these negotiations that Dr. Buttar was a citizen of the United Kingdom and Mr. Reddy was a citizen of the United States residing in Vietnam. This case came before the district court in the Western District Court of North Carolina to enforce the arbitration award granted to Mr. Reddy by the Singapore International Arbitration Center. And it is appellant's argument, first, that the district court did not have personal jurisdiction over Dr. Buttar. And secondly, by failing to, by Mr. Reddy's failure to provide the latest signed complete agreement, the court lacked subject matter jurisdiction. And assuming that they did have subject matter jurisdiction, summary judgment enforcing the award is contrary to public policy. And it's for those reasons that appellant respectfully asked this court to reverse the summary judgment holding, and in the very least, tell the lower court that there needs to be some sort of evidentiary finding. Moving to the issue of personal jurisdiction, this court well knows that for the, well, first, I think it's important to note that this is a question of general jurisdiction. And this court well knows that in order to enforce or to invoke general jurisdiction over an individual defendant, and I think that's important here because a lot of the cases cited and relied upon in the lower court and in the briefings before this court concern corporate defendants. But over individual defendants, the court must look at the defendant's domicile, which can be defined as the last residence where, in this case, Dr. Buttar intended to remain permanently or indefinitely and to return whenever he's away. The district court ultimately, after a jurisdictional discovery, ultimately found that it did have personal jurisdiction over Dr. Buttar. And we would assert that's simply not the case. Mr. Dr. Buttar moved from North Carolina to New Zealand in 2017, over a year prior to the suit. He, although he operated, he was the face of a medical practice, the Center for Advanced Medicine. Just with respect to that assertion that he moved to New Zealand is the only evidence. He has no home there or no residence there. He has, you provided a visa. Is that what it was you provided in the record? Yes, Your Honor, he does not. That's the evidence we have before us. And I was going to ask you about the question raised by your opponent, that that is a manufactured document and not authentic. Do you have any response? Have you checked on that? Um, Your Honor, I will be candid. I did speak with Dr. Buttar a few days ago. And it was very late in the evening for him, given the time change. However, it was, there was a point in the district docket number 43, number 43. There's an affidavit from New Zealand Council that he assisted Dr. Buttar in New Zealand for obtaining New Zealand permanent residency, which takes over a year from or over a half year from when you're granted. Well, I'm asking you about this document. That's in the record. It's the only evidence I saw that in furtherance of this allegation and the suggestion made by an immigration expert in New Zealand is this is a manufactured document and not authentic. My question is, when you received that affidavit, did you check to see whether you were advancing a manufactured document as opposed to an authentic one? It's, it was our understanding that this was an authentic document. That's Where did you get that information? From Dr. Buttar. After this allegation? And did you ask him after this allegation? Yes. And what did he say? He said that this was prepared by an attorney in New Zealand. And there was no indication, I was provided no indication that this was a manufactured document. So we have no contact with any official authority in New Zealand. The reason I ask is not only does the document contain the suspicious account number that was noted by the immigration lawyer, but it also only shows eight digits for the passport number. And the passports in United Kingdom and United States all have nine digits. And I, I didn't see anything of certified or stamped on it or seal it. It looked funny to me. And I was wondering whether you as an officer of the court, were continuing to advance the document if you had serious doubts as to whether it was authentic. Your Honor, I do recognize what the immigration expert stated. And I believe that there are questions what alleviates I mean, it was very easy to get the official certified copy of the visa from New Zealand, from the immigration authorities there. I'm sorry, Your Honor. Could you repeat your question? Well, I would have would have thought that it would be fairly straightforward to have somebody there get a certified copy of the visa from some New Zealand authority immigration authority there. Anyway, if you haven't checked it, apparently you didn't check it. You just relied on Mr. Patar's statement. Oh, yes, Your Honor. And Mr. Patar is in, you say he's living in Vietnam? Dr. Patar is living in New Zealand at the moment. In New Zealand? Yes, Judge. And he's staying in a friend's house? That is, that is the current understanding. Yes. You don't know? I can't say for certain. There's just the lack of documentation. I mean, admittedly, it's difficult to ascertain exactly what the living situation is. I know that he moved in 2017 to New Zealand with And he moved all his goods into a warehouse in North Carolina, right? But I believe that it was mixed between North Carolina and Texas. Yeah, but he has in North Carolina, he has a he is running a storage facility, right? That is correct. And the district judge ruled against you as a matter of fact, on the North Carolina issue. Yes, Judge, the district court ruled that the continuing contacts after Dr. Patar moved and the, I guess the lack of concrete proof that Dr. Patar is was in New Zealand, kept him eligible for the court to exercise personal. He found against you as a matter of fact, and we review that. Yes, Judge. And with respect to his business, he continues to have a contractual supervision over employees of his former business, doesn't he? I believe that Dr. Patar has only gets paid. I didn't ask what he got paid. He's exercising contractual supervision over people that need to have a doctor sponsoring them. Yes, Judge. That's what he testified. And and and and in his divorce papers, he provided that his address in North Carolina was his residence. Yes, Judge. However, I do find that he said the lawyers just made that up. Excuse me, Your Honor. And he asserted when asked about that, that the lawyers just made that up in order to facilitate the proceeding. Yes, that is that is what Dr. Patar's stance was in terms of the divorce proceeding in North Carolina. To the to the second point, even if this court did have personal or the lower court had personal jurisdiction over Dr. Patar, the fact of the matter is that Article four of the New York Convention specifically requires that a party seeking recognition of the award must supply the copy of the agreement and the arbitration award together. And there is no dispute that Mr. Reddy provided the lower court with a copy of the award. However, there is a dispute of whether the agreement, a valid agreement, was presented to the court. And the copy attached to the amended petition in the 380 something page of the record is a fully signed copy of the agreement. And and it's certified by the magistrate in Singapore as the document that was adjudicated there. How do we handle that? Well, Judge, the point with that document being certified is first that that was not that document. It's Mr. Dr. Patar's stance that that document was not the last agreement fully signed. Well, that's the one that was before the arbitrator as certified on the face of the document. That was the one that was adjudicated in the arbitration in Singapore. And so the question is, your argument is that and you state in your brief, they have consistently failed to present a signed and executed final agreement between the two men. You've said that twice in your brief. But yet the record at 389 contained the copy of the document signed by both men and certified by the magistrate in Singapore. Now, how do we handle that? You just said a true test copy would be sufficient. That's what they provided. Well, Judge, it's our position that this was not the latest document. And in fact, Dr. Patar's signature was. Why didn't you tell the arbitrators that? Well, the reason is because the latest document agreed on the Philippines being the forum for arbitration. So. No, my question is, when the arbitration began in Singapore, why didn't your client go and point out that this was not the final document, even though it's fully signed? This is not the final document and that the final document, you could have provided the final document challenging Singapore location. Your Honor, I'm out of time. May I please respond? Yes, please do. Well, the reason Dr. Patar did not bring this, did not contest this in the Singapore arbitration was because his counsel overseas advised him not to engage in any sort of arbitration and appear before the arbitrator in Singapore because that would essentially be an admission and acknowledge that that was the final document. So without a response, that was a strategic decision made. In other words, the alternative would be to go to the arbitrator and say he has a long agreement and that this should be in the Philippines. But that wasn't done. And not only that, his attorney did file a paper with the arbitrator, didn't he? Yes, Judge, but Dr. Patar, why isn't that an appearance in the proceeding? I mean, to your point, Judge, it is a it is a type of appearance in the proceeding. I think the strategy was more of not availing himself to Singapore. Well, I understand the strategy, but then it's hard to come in later and say after the arbitration that the arbitration didn't have an agreement when it did have an agreement and acted on an agreement that that's, you argue, is the jurisdictional basis for the enforcement under the treaty. And so you're facing a situation where they did provide the contract and you say you didn't provide the contract. You say that the real contract provided for Singapore, I mean, a Philippines arbitration. But the contract that was certified by the Singapore arbitrator said it was arbitration in Singapore. But isn't that all something to be handled by the arbitrator and not by an American court enforcing that? Well, I do think that American courts in enforcing arbitration awards are required to ascertain whether a valid arbitration clause was entered into. And if the contention is that what was presented to Singapore was not a valid arbitration clause, then summary judgment was improper. Well, I don't see any basis where you show you provide, did you provide a signed, ultimately signed copy in this proceeding to even challenge that? No, Judge, the the unfortunate fact is that the logistical challenges of Dr. Bondurant's jurisdictional discovery in the lower court, it was difficult to ask to locate and present the final agreement. All right. Thank you. All right. Well, yeah, fine. Thank you, Mr. Thomas. We'll hear from Mr. Bondurant. Thank you, Judge. Judge Niemeyer, may it please the court, Joe Bondurant here this morning on behalf of Rashan Reddy. I actually don't intend to take a whole lot of time. I just want to go over sort of what the what the arguments here on the issues. And I'm going to start where your honors kind of left off with this question of of the challenge in the arbitration, because the truth is they did raise it in the arbitration that that they raised the argument in the arbitration, in the submission that they made to the arbitrator, that the argument that the agreement, the duly signed, jointly executed agreement was not the actual final agreement. That argument was submitted, documents and evidence were taken, and the arbitrator ultimately ruled against them on that, calling that argument disingenuous for several reasons. And that was the basis of the district court's finding that they were even collaterally stopped from raising all this stuff. Aside from everything else, there's a collateral stoppable finding by the district court that wasn't even challenged on appeal. So we've got a fairly substantial obstacle there. But having said that, let me just sort of turn and address these these issues in order, the personal jurisdiction, then the subject matter jurisdiction, and then the summary judgment finding on personal jurisdiction. As your honors are well aware, and we've been point of discussion that, you know, the issue was domicile. And we would submit to the court that the Judge Whitney's analysis is a virtual model analysis. I mean, it steps through through the legal principles of domicile. It weighs the facts. It acknowledges the need to take a totality of the circumstances approach. It does that. The judge explained why he was crediting certain facts and evidence over others and why he discounted others. And he found, as a matter of fact, as Judge King was pointing out, as a matter of fact, that the domicile had not changed from North Carolina as of the time that the that the lawsuit was filed. And that is a finding of fact reviewed for clear error. And so the court could only reverse that if it was left with a definite and firm conviction that Judge Whitney made a mistake. And so with that, you know, kind of leave that there unless your honors have any questions. I mean, the you know, again, the factual analysis is pretty good. There's several alternative bases for holding personal jurisdiction. Those are asserted in my brief. I don't really intend to spend a lot of time on them. You know, we raised judicial estoppel in the district court on the basis of the divorce documents that your honors mentioned. Judge Whitney just declined to address it because he ruled in our favor on the domicile issue. We also had the argument that even if it's not his domicile, his contacts with North Carolina had been sufficiently systematic and continuous over a sufficient period of time for general jurisdiction. Judge Whitney disagreed with that argument in a footnote, but again, didn't elaborate much because of he ruled with us on domicile. Also, we got the possibility of transitory jurisdiction because we tagged him while the while the case was being in the motion stage. We, you know, we knew he asserted in his brief that he was never served in the United States. And I looked into the record and it looked to me like he was, in fact, served. He refused to take the papers. He was advised that the papers were suit papers and he was told what they were and he refused to take them. So that the server laid them on the ground there by the in front of Mr. Bitar and then surveyed the situation. And Mr. Bitar came back and picked them up and left. Yes, sir. That's accurate. And so, yeah, that's I think he'd seen too many movies. So maybe you want to get on to your other arguments. Oh, yes, ma'am. So subject matter jurisdiction, I'll just hit briefly as the court's well aware, subject matter jurisdiction just deals with the category of cases that the court's inclined is authorized to hear. Here at Plainly is it rising under 1331 because it's a it's a petition under the Federal Arbitration Act. The act itself says that jurisdiction is appropriate in the district courts. And so the argument really has been that failure to provide the the duly signed document at the outset, the duly signed agreement somehow affected the court subject matter jurisdiction. But as we elaborate on our brief, there's just no no legal support for that position. The facts themselves don't dictate the court subject matter jurisdiction. The statutes do. And as the court has already noted, we did a motion to amend which was granted, which which did submit the duly signed agreement, you know, as part of the exhibit. And under a wealth of authorities about a mile long, any amendments would relate back and could cure any subject matter jurisdiction. That's not been challenged here. Right. The amendment is not challenged. Exactly. Thank you. So yes, and the subject matter jurisdiction is. And so briefly, even if the court thought there was a subject matter jurisdiction with the original submission, the subsequent amendment would have cured that. So we know no issues there. Subject. Excuse me. Summary judgment on the question of summary judgment. That's the third ruling that's that's before this court. Like I said, there's a huge hurdle here in that the court district court, Judge Whitney found that they were collaterally stopped from raising these issues because their sole issue that they've repeated throughout the proceeding has been this claim that somehow this this agreement is fraudulent. The agreement that contains the arbitration cause somehow, you know, forged or fraudulent. Judge Whitney found that they were collaterally stopped from raising that because they raised it in the arbitration and the arbitrator ruled against them. Now, they subsequently decided as Mr. Thomas. I'm not sure. I'm not sure collateral estoppel is the right doctrine. It seems to me if an arbitrator decides something, then it's our deference to the arbitration finding that governs that. We don't go back and review the facts of an arbitrator. I understand that. And that certainly is an alternative possible way to resolve it. And we certainly made that argument in the lower court. And in our brief, there is there is case law that an arbitration award is collateral estoppel. But we can also arbitration award would have to be collateral estoppel in a court, right? Have been forced in a court. I mean, I think the actual arbitration arbitrator, the arbitrator has no force of law until it's enforced in a court. This is a contractual arrangement. OK, I understand the point, your honor. And if that's the way the court is inclined to frame it and view it, I just I'm questioning you. Oh, no, I understand. I just it was my understanding and I didn't probe it admittedly at that depth. But it's my understanding that an arbitration arbitrator's decision can also be collateral estoppel. And I thought there was we cited some law in our brief to that I didn't plumb it deep enough. And perhaps there is more of a procedural requirement that it be registered in order to be collateral estoppel. I didn't see that. But in the event that it is solely a deference issue, the point remains, I mean, the arbitrator decided it. The courts regularly defer to to arbitrator decisions. This as a matter of fact, this whole issue of whether or not the arbitration agreement is even valid is not even one that's it's not even a valid challenge under the to a registration action. I mean, again, I've briefed that thoroughly in our and I mean, the is the doctor ever produced this what he regards as the genuine agreement, which talks about the Philippines being the place where the arbitration should have taken place. No, ma'am, I've never I've never received any. We've never received any admission from from Dr. Buttar that there there is some alternative signed agreement. We've never gotten anything like that. There's an admission by him, but he has he that's his whole argument, I think. But he's never sent you a copy of that or produced it to the district court. No, ma'am, we don't have that. And as Mr. Thomas produced it to the arbitrator. Correct, Your Honor. And in the arbitration award, if you review that section of it that deals with the first objection, which is at page. We'll see what page that is. Why was it not showing up on my screen? We can find it. Don't worry. Sorry about that. But anyway, it's if you review that section, it's very plain what what's what evidence was submitted to the arbitrator in that in that connection with that issue. And it was the bulls eye. And, you know, we don't review arbitrators for the substantial evidence doctrine. They hear the dispute. The parties can put in what they want. And the arbitrator makes a finding. And the only issue is whether we enforce the arbitration award. And that's based on criteria that are established by the relevant acts, whether it's the Federal Arbitration Act or in this case, the Enforcement of Arbitration Awards Act, New York Convention or whatever that is. Yes, sir. I agree. Which brings me back to the point that I was attempting to address earlier. The grounds, as you know, as the court knows, are very limited in what you can do to challenge an arbitration award. And this challenge that they're trying to mount is not one of the case law. And the authorities are fairly clear that even if you want to challenge the validity of the underlying agreement, that has to be done in what they call the primary jurisdiction versus the secondary jurisdiction and the primary jurisdiction being the jurisdiction that actually issued the award. So it would have to be Singapore here if they wanted to try to bring any kind of validity of the agreement, assuming they were able to do that. They can't raise it here in the United States federal courts when we try to get it registered and enforced. And there's just no basis for doing that. And again, I guess I'll just close unless the court has any questions. I have a question really about the facts of this case. So if we should affirm here, what is happening with this property that I understand is at stake? Your Honor, the property itself, my understanding is, of course, I wasn't involved at that stage when that was going on. My understanding is it was some type of share purchase agreement to develop the property. I don't know that it was, it just never got off the ground is my understanding of that. I think that's what kind of gave rise to the original proceeding in the arbitration was just claims that these were basically fraudulent solicitations of investments and the like, which is how they wound up getting the arbitration award that we're now trying to resolve as, excuse me. So money is at stake? Yes, ma'am. We got a, we got a arbitration award is in the neighborhood of about 1.5 million. And is that money been, is there a bond for it or something while this appeal is going on? No, ma'am. There's, there's, there's no bond for that. The, you know, the truth is we don't frankly know at this point whether or not, you know, he's going to, we don't know if we're going to wind up with an uncollectible judgment in essence. You don't know what? I don't know if we're going to wind up with an uncollectible judgment. I mean, he's not. Evidence in the records, you're not going to find any assets, but he seems to have a pretty good supply of money, his traveling and his interest in those things here that you talked about earlier, his business here. You want the judgment so you can try to collect? Yes, sir. That's, that's ultimately, you know, this property that you hear mentioned in Huntersville, there's some question about, you know, how that was, it was transferred to some entity that's less than transparent. And so there's some question about, you know, that used to be in residence and we don't know if we can get that. Transfers to avoid debts do create a problem for a transferor. Yeah. All right. Anything else? No, sir. Unless the questions, I'll wrap it up. Thank you, Mr. Bondurant. Mr. Thomas. Thank you, Judge. Just briefly. Mr. Bondurant mentioned that the only issue before that can be considered before the courts is whether the arbitration award can be enforced. And I'd just like to point the court's direction to BRG, Linus Arias versus Matlin Patterson, where the court specifically states that in order to, if the parties agree to arbitrate in the first place, only the court can answer questions of arbitrability. And so if so, I do believe just a slight point of contention is that if there is a the validity of the arbitration clause, this is that is something that this court can consider. Second, I would think there is always a discussion under the FAA cases about whether arbitrability is a contract issue for the courts or an issue committed to the arbitrator to resolve. But in this case, there's a pretty clear arbitration clause and the commitment of this issue to the arbitrator looks pretty clear, but I don't see that that was ever challenged. In other words, the subject matter of the arbitration of what the court what the arbitrator addressed appears from the face of the clause and the dispute to be within what the arbitrator could adjudicate. So your argument would have to be that the contract did not give the arbitrator the And if you accept that the agreement arbitrator found that that was the governing agreement, if you find that that agreement provided for arbitration of these issues, basically it's a return of money. I understand that Mr. Reddy advanced a million and a half dollars in cash and never got it back when the project failed. And so the question is, why isn't that appropriate for arbitration under the agreement under which money was advanced? If this court were to find that the agreement presented to the Singapore Arbitration Center was, in fact, the final agreement between the parties, then that would be the case. How can we decide that? I mean, that was presented to the arbitrator. Apparently you challenged that, right? Before the arbitrator? Yes, judge. And the arbitrator overruled your objection or rejected your position. So now how are we in a position to say the arbitrator was wrong? Well, I believe that the district court was in a position to at least move forward with the proceedings and not grant summary judgment because there was this contention of that. No, you contended and it was rejected. I don't know how we review an arbitrator's finding a fact, how the district court can review it, how any court can review it. The parties contracted to resolve their dispute by arbitration and the various countries, including the United States, have arbitration rules. And if you follow the rules, then we enforce those contracts or we don't. Now, if the contract itself was obtained by fraud, we could set it aside, but there's no evidence of that. As a matter of fact, there's a finding that that was the contract, the governing contract, and you could challenge that. You could have produced the other contract. You could have produced facts saying that this was not the final version, although it's all signed and it's certified by the magistrate. But those are things that are presented in the arbitration. And they're not things that I don't think, I'm not sure how we would address them. If we were to address them, I don't see any evidence from you as to how we would sustain your position. I mean, you've conceded the real agreement is not available, at least your alleged real agreement. Yes, Judge. It is our understanding that the real agreement, just given the logistic challenges, logistical challenges, would need increased time and resources to... I don't understand that logistics. I assume that Mr. Bitar has a copy of it and he'd have it in either one of two places or three Are there still among his belongings in the storage facility in North Carolina and Texas? Yes, Judge, that certainly is a valid possibility. To that extent, I just, I don't know how to, just candidly, I don't know how to sufficiently explain to the court why... Well, I understand your problems. I'm not focusing on you. You had a difficult circumstance to handle here. I would just like to close by saying that there are ways where the lower court could refuse to enforce the arbitration award and those being public policy. And if... What's the public policy? What's the public policy? Why is this against the public policy to order the return of monies on a project that never went forward? Well, the issue is, do we want United States District Courts to enforce an award on an allegedly fraud agreement? And perhaps we... Oh, the fraud is gone. You had the possibility of ledging it and proving it, but you produced a zero, zero evidence in that regard. You could have produced the document. You could produce exchanges. As a matter of fact, the email exchanges suggest there was an agreement. As a matter of fact, Mr. Batal was trying to enforce the agreement against Mr. Reddy and telling him he had expenses under the agreement that need to be reimbursed. There's a lot of inconsistencies in here on that, but I don't understand the public policy. I mean, if we had evidence that it was fraudulent, I don't think we would enforce it and you'd have a pretty good case. Yes, Judge, that is simply our position, and I do appreciate the court's time and the court's questions. I see I've run out of time, and I do appreciate your time. Well, thank you, Mr. Thomas, and I hope everything goes well in your household there with the COVID situation. Thank you. I have family visiting. We're excited to see them, but a little weary. Yeah. We would normally come down and greet you. In this circumstance, it's even more remote a possibility, but we thank you for your arguments. And you come to the court again, we will come down.
judges: Paul V. Niemeyer, Diana Gribbon Motz, Robert B. King